UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TAMEIKA M. ADDISON | : | |
| | : | |
| v. | : | C.A. No. 05-122A |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner, Social Security | : | |
| Administration | : | |

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on March 24, 2005 seeking to reverse the decision of the Commissioner. Plaintiff filed a Motion for Judgment Reversing Decision on September 13, 2005. The Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner on September 26, 2005. With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the entire record, my independent legal research, and my review of the legal memoranda filed by the parties, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion For Judgment Reversing Decision (Document No. 9) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for SSI on June 30, 2002, alleging disability since April 1, 1999. (Tr. 701-704). The application was denied initially, (Tr. 675, 677–679), and on reconsideration. (Tr.

676, 682-684). Plaintiff previously filed an application for SSI on March 17, 1995, which was denied at the initial level of determination. Plaintiff did not seek further review. Plaintiff filed a subsequent application for SSI on March 18, 1996, which was denied at the initial, reconsideration and hearing levels of determination. Plaintiff again did not seek further review.

On July 2, 2004, a hearing was held before Administrative Law Judge Martha H. Bower (the "ALJ"), at which Plaintiff, represented by counsel, a vocational expert, a medical expert and Plaintiff's mother testified. (Tr. 39-78). The ALJ issued a decision on November 9, 2004, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 12-24). The Appeals Council denied Plaintiff's request for review on February 11, 2005, (Tr. 8-10), rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that this Court should enter judgment reversing the Commissioner's decision and remanding for payment of benefits or, in the alternative, for further administrative proceedings in accordance with 42 U.S.C. § 405(g) and § 1383(c)(3). Plaintiff brings this action to review the final decision of the Commissioner and to challenge whether the findings of the Commissioner are legally correct and supported by substantial evidence. In particular, Plaintiff argues that the ALJ improperly rejected the opinion of Doctor Patricia Flanagan, her long-time treating physician, and that the ALJ's residual functional capacity assessment is not supported by substantial evidence. Further, Plaintiff contends that the ALJ's step five finding of no disability is erroneous because it was based on the vocational expert's response to an "unsubstantiated" hypothetical question.

-2-

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for

failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. <u>See</u> <u>Keating v. Sec'y of Health and Human Servs.</u>, 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. <u>See</u> <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. <u>See</u> 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (<u>see</u> 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). <u>See also</u> <u>Dudley v. Sec'y of Health and Human Servs.</u>, 816 F.2d 792, 794 (1st Cir. 1987).

**B.     Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d

990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right

to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of

that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human

Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by

counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained

counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty,

947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir.

1980).

**C.     Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine whether

the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.

1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a

consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs.,

758 F.2d 14, 17 (1st Cir. 1985).

**D.     The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§

404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

-7-

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.   Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.    APPLICATION AND ANALYSIS

Plaintiff was twenty years old at the time the ALJ issued her decision. (Tr. 701). Plaintiff has a ninth grade education, was pursuing her high school equivalency diploma ("GED") at the time of the ALJ hearing, (Tr. 44, 712), and has "never worked." (Tr. 706, 737). Plaintiff's son was born in 1999, and he was five years old at the time the ALJ issued her decision. (Tr. 46). Plaintiff and her son were living with Plaintiff's mother, grandmother, younger brother and younger sister. (Tr.

-11-

44).  Plaintiff's parents "split up" when she was eight years old.  (Tr. 746).  Plaintiff's father had a

history of drug abuse and periods of incarceration.  Id.  Plaintiff's father passed away in 2004.  (Tr.

900).

Plaintiff dropped out of school after ninth grade and around the time of her son's birth.  At

the time of the ALJ hearing, Plaintiff indicated that she needed to retake one final test to complete

her GED.  (Tr. 44).  Plaintiff began a vocational program in 2002 known as Career Tracks Youth.

(Tr. 739).  This program was intended to assist Plaintiff in attaining her GED and vocational job

training.  (Ex. B14F).  For instance, Plaintiff was initially enrolled in a certified nursing assistant

("CNA") training program.  (Tr. 890).  After Plaintiff failed to show up for or call into her CNA

program for a period of time, she was dismissed from the program.  Id.  Plaintiff later advised her

vocational counselor that she no longer wanted to pursue the CNA training program.  Id.

In June 2003, Plaintiff indicated that she was interested in working as a day care worker or

cosmetologist and that she had "informal" experience in these areas.  (Tr. 913).  Plaintiff has never

worked.  In addition to caring for her son, Plaintiff indicated at the hearing that she baby sat for

another family until they moved "probably a few months after [she] filled out" her SSI application

in June 2002.  (Tr. 52).  Plaintiff also indicated that she has occasionally volunteered without pay

to assist her mother at work assembling jewelry.  (Tr. 43-44).  Through Career Tracks Youth,

Plaintiff volunteered at the Rhode Island Community Food Bank on one occasion for two hours and

attended a couple of golf sessions at Buttonhole Golf Course.  (Tr. 902).

Plaintiff was diagnosed with "insulin-dependent diabetes" in 1994 at ten years of age.  (Tr.

139).  Plaintiff testified before the ALJ that she was "very angry" about her diabetic condition.  (Tr.

60).  Initially, Plaintiff's diabetes was poorly controlled, due in large part to her noncompliance.  (Tr.

-12-

302-303, 306-307). It was reported that Plaintiff appeared "stable" when examined at Rhode Island Hospital in November 2002. (Tr. 549). She reported to Dr. Flanagan in May 2002 that "things are much better," that she had "no more pains anywhere" and it was noted that she was "well appearing"/"more energetic" than previous visit. (Tr. 851). In February 2003, it was reported in Plaintiff's Rhode Island Hospital records that her diabetes was "adequately controlled at this time," (Tr. 861), and as to mental health that Plaintiff had "no complaint at this time" and appeared in "good spirits." (Tr. 862). Better control of Plaintiff's diabetes was reported by an examining nurse practitioner in June 2003. (Tr. 871).

The ALJ concluded that Plaintiff's diabetes, personality disorder and depression constituted severe impairments. (Tr. 17). Although the record contained some reference to a diagnosis of ADHD, the ALJ found such condition to be "nonsevere" in the absence of any reported treatment or significant work-related limitations related to ADHD. (Tr. 17, fn.2). The ALJ found that none of Plaintiff's "severe impairments" were of listing-level severity and that Plaintiff suffered from nonexertional limitations consisting of moderate impairments related to concentration, persistence and tolerance. (Tr. 21-23). Ultimately, the ALJ found that Plaintiff could perform a limited range of light work and thus she was not disabled within the meaning of the Act.

### A.     The ALJ's RFC Assessment is Supported by Substantial Evidence

After reviewing medical evidence from a record totaling nearly one thousand pages, the ALJ concluded that Plaintiff had the RFC to perform light work. (Tr. 22). Specifically, the ALJ ruled that Plaintiff could lift and carry up to ten pounds frequently and twenty pounds occasionally, as well as sit for at least six hours in an eight-hour workday, and stand and/or walk for the same period. (Tr. 22-23). As to Plaintiff's mental impairments, the ALJ found that they moderately impaired

Plaintiff's ability to concentrate, persist, relate to others and tolerate ordinary work pressures. (Tr. 23).

Plaintiff contends that the ALJ failed to properly evaluate all of the medical and other evidence of record and thus her RFC assessment is legally flawed. For instance, Plaintiff challenges as erroneous the ALJ's decision to "give less probative weight" to the opinion of the treating physician, Dr. Flanagan. The opinion in question, dated July 16, 2004, indicated that working forty hours per week in a "physically undemanding" job "may be more than [Plaintiff] can tolerate due to her fatigue and poor sleep." (Ex. B17F). (emphasis added). The ALJ appropriately discounted Dr. Flanagan's opinion because it is "nonspecific as to [Plaintiff's] functional limitations," "inconsistent with the...record as a whole," and addresses the "ultimate issue of disability" reserved to the ALJ. (Tr. 18).

According to the treating physician rule, when an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must weigh that opinion using the factors from 20 C.F.R. § 416.927(d) and explain the weight given. See Social Security Ruling ("SSR"), 96-2p. When weighing a treating physician's opinion, the ALJ considers (1) the length of the treating relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; and (5) specialization. See 20 C.F.R. § 416.927(d). The ALJ adequately considered and addressed Dr. Flanagan's medical opinion in accordance with 20 C.F.R. § 416.927(d).

Plaintiff points to Dr. Flanagan's opinion that she could not tolerate working forty hours per week due to her fatigue and poor sleep. (Tr. 949). As noted, the ALJ determined that Dr. Flanagan's opinion was entitled to less probative weight because that opinion was nonspecific as to Plaintiff's

functional limitations, inconsistent with the evidence of record as a whole, and addressed an issue reserved for the Commissioner. (Tr. 18).

Plaintiff argues that there is no basis for the ALJ's finding that Dr. Flanagan's opinion was inconsistent with the evidence of record as a whole, since Dr. Flanagan repeatedly found that Plaintiff suffered from poor sleep and fatigue due to poorly-controlled diabetes. Pl.'s Br. at 12-13. However, Plaintiff's argument misses the point, as the ALJ reasoned that Dr. Flanagan's opinion was inconsistent with the evidence of record as a whole, not internally consistent with her own prior findings. Thus, the fact that Dr. Flanagan found that Plaintiff suffered from poor sleep and fatigue does not refute the ALJ's finding that the other evidence of record, as a whole, was inconsistent with her opinion that Plaintiff could not work forty hours per week. Whether a treating physician's opinion is consistent with the other evidence of record is a determination that an ALJ must make in each case. See SSR, 96-2p; and 20 C.F.R. § 416.927(d)(4). Here, substantial evidence supports the ALJ's finding that Dr. Flanagan's opinion that Plaintiff could not work forty hours per week was inconsistent with the record as a whole.

In particular, Dr. DeMarderosian opined in 2002 that Plaintiff could participate in sports, (Tr. 546), and Dr. Pingitore found that Plaintiff reported having sufficient energy to carry out her daily activities and normal activity of age. (Tr. 542). Similarly, Dr. DiZio found that Plaintiff had no psychiatric limitations in her ability to perform her daily activities. (Tr. 748). Further, Dr. Fish concluded that Plaintiff had the physical ability to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for six hours in an eight-hour workday; and push/pull without limitations. (Tr. 808).

Moreover, Dr. Slavit opined that Plaintiff could understand and remember three-step instructions; persist at routine work for two-hour periods throughout an eight-hour workday; relate to supervision; make routine work-related decisions; recognize and avoid work hazards; and adapt to workplace changes. (Tr. 833). Finally, Dr. Diaz opined that Plaintiff could understand and recall simple tasks and work procedures; perform simple tasks that were not highly time pressured; sustain limited interactions with the public, coworkers, and supervisors; be aware of basic hazards; and plan for simple tasks. (Tr. 765). Thus, substantial evidence supports the ALJ's finding that Dr. Flanagan's opinion was inconsistent with the record as a whole.

Plaintiff also challenges the ALJ's finding that Dr. Flanagan's opinion was entitled to less probative weight because that opinion addressed an issue reserved for the Commissioner. Pl.'s Br. at 13. As stated above, Dr. Flanagan opined that Plaintiff may be unable to tolerate a forty-hour workweek. (Tr. 949). However, a medical source's opinion that a claimant is unable to work addresses an issue reserved for the Commissioner and, consequently, is not entitled to controlling weight. See SSR, 96-5p; and 20 C.F.R. § 416.927(e)(1). Thus, the ALJ's conclusion that Dr. Flanagan's opinion was entitled to less probative weight is not legally erroneous.

As stated above, the ALJ also found that Dr. Flanagan's opinion was entitled to less probative weight because that opinion was nonspecific as to what functional limitations prevented Plaintiff from working forty hours per week, which Plaintiff apparently does not challenge. (Tr. 18, 949). The weight an ALJ gives to an opinion depends, in part, on the degree to which the treating physician provides supporting explanations. See 20 C.F.R. § 416.927(d)(3). Thus, substantial evidence also supports the ALJ's finding that Dr. Flanagan's opinion was entitled to less probative weight.

-16-

Plaintiff next points to Ms. Beach's and Ms. Haller's opinion that she would have difficulty with a regular eight-hour per day, five-day per week work schedule. (Tr. 948). Ms. Beach and Ms. Haller work at Career Tracks Youth and counseled Plaintiff in that program. Neither are medical professionals. The ALJ determined that Ms. Beach's and Ms. Haller's opinions were entitled to minimal probative weight because they were not acceptable medical sources, and because their opinions were inconsistent with the record as a whole and addressed an issue reserved for the Commissioner. (Tr. 18, 21).

Plaintiff first seems to allege that the ALJ violated her duty to consider Ms. Beach's and Ms. Haller's opinions, pursuant to 20 C.F.R. § 416.945(e), which directs an ALJ to consider non-medical evidence when assessing a claimant's RFC. Pl.'s Br. at 15. However, the ALJ did consider their opinions when assessing Plaintiff's RFC, but simply determined that they were entitled to minimal probative weight, (Tr. 18, 21), as stated above.

Plaintiff further argues that, even if the ALJ did consider their opinions, she improperly relied on the fact that Ms. Beach and Ms. Haller were not acceptable medical sources to find that their opinions were not entitled to controlling weight. Pl.'s Br. at 15. For an opinion to be adopted and given controlling weight by an ALJ, the opinion must be a "medical opinion." See SSR, 96-2p; and 20 C.F.R. § 416.927(a)(2). A "medical opinion" is an opinion that is rendered by an acceptable medical source. Id. An acceptable medical source, however, does not include a vocational program director or teacher. See 20 C.F.R. §§ 416.913(a)(1)-(5); and 416.913(d)(2)-(3). Thus, the ALJ properly considered the fact that Ms. Beach and Ms. Haller were not acceptable medical sources to find that their opinions were not entitled to controlling weight. See Jamerson v. Chater, 112 F.3d

1064, 1066-1067 (9th Cir. 1997) (ALJ properly found that special education teacher's opinion was entitled to little weight because she was not acceptable medical source).

Specifically, the ALJ also determined that Ms. Beach's and Ms. Haller's opinion was entitled to minimal probative weight because their opinion was inconsistent with the evidence of record as a whole and addressed an issue reserved for the Commissioner. (Tr. 18, 21). As discussed above, substantial evidence supported the ALJ's determination that Dr. Flanagan's opinion that Plaintiff was unable to work forty hours per week, was entitled to less probative weight because it was inconsistent with the record as a whole and addressed an issue reserved for the Commissioner. Consequently, that same substantial evidence supports that ALJ's finding that Ms. Beach's and Ms. Haller's identical opinions that Plaintiff would have difficulty with a regular eight-hour per day, five-day per week work schedule was entitled to minimal probative weight because they were inconsistent with the record as a whole and addressed an issue reserved for the Commissioner. In fact, Dr. Ruggiano, the medical expert, testified that Ms. Beach's opinion was inconsistent with the evidence of record. (Tr. 70). Thus, substantial evidence supports the ALJ's finding that Ms. Beach's and Ms. Haller's opinions were entitled to minimal probative weight.

Finally, Plaintiff alleges that substantial evidence does not support the ALJ's finding that Plaintiff's ADHD was a non-severe impairment. (Tr. 17); Pl.'s Br. at 15-16. Plaintiff is mistaken. On August 11, 2003, Dr. Wrobel opined that Plaintiff suffered from ADHD. (Tr. 888). The ALJ found that Plaintiff's ADHD was non-severe, in part, because she was never treated for that impairment. (Tr. 17). The ALJ's finding is supported by the evidence of record, as Dr. Ruggiano testified that the medical evidence failed to establish that Plaintiff was treated for ADHD, (Tr. 70), Dr. Wrobel never referred Plaintiff for mental health treatment, (Tr. 885-889), and Plaintiff never

sought such treatment on her own, all of which reasonably supports the ALJ's conclusion that Plaintiff's ADHD was not severe. See, e.g., Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993) (despite treating physician's observation that Plaintiff had anxiety, substantial evidence supported ALJ's finding that her mental impairment was not severe, since she never sought, or was referred to, mental health treatment).

Further, the fact that Dr. Wrobel diagnosed Plaintiff with ADHD does not mean that Plaintiff's ADHD was a severe impairment. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981) (existence of impairment alone does not mean impairment is severe). Rather, an impairment is severe if the medical evidence establishes that the impairment significantly limits the claimant's ability to perform basic work activities. See 20 C.F.R. § 416.920(c); SSR, 85-28. If the claimant can perform basic work activities, her impairment is not severe. See SSR, 85-28.

Here, as noted by the ALJ, the administrative record failed to document that Plaintiff's ADHD significantly limited her ability to perform basic work activities. (Tr. 17). Plaintiff challenges that finding by relying on Dr. Wrobel's opinion that she needed extra time on her high school equivalency test and to be in a test room free from distractions by other students, due to her ADHD. (Tr. 888). Plaintiff believes that Dr. Wrobel's opinion demonstrates that her ADHD impaired her ability to perform a basic work activity. Pl.'s Br. at 16. However, needing extra time on a test and being in a test room free from distractions are not basic work activities. See 20 C.F.R. § 416.921(b); and SSR, 85-28. Basic mental work activities include: (1) understanding, carrying out, and remembering simple instructions; (2) use of judgment; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. See 20 C.F.R. § 416.921(b); and SSR, 85-28. Further, Dr. DiZio noted that Plaintiff did not

-19-

claim to have any difficulties concentrating in her high school equivalency classes. (Tr. 747). Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's ADHD was a non-severe impairment.

**B.    The ALJ's Step Five Finding is Supported by Substantial Evidence**

The ALJ ultimately found Plaintiff not disabled at step five based on the VE's testimony that "a significant number of unskilled light jobs with [Plaintiff's] residual function exist in the national/regional economy." (Tr. 22). Plaintiff contends that this step five finding is legally flawed because the VE's testimony relied upon came in response to an unsubstantiated hypothetical question.

At the hearing, the ALJ posed several hypothetical questions to the VE. (Tr. 75-76). In response to one of the hypotheticals (the third), the VE concluded that the hypothetical individual would be precluded from working. (Tr. 76). In response to the others, the VE concluded that work was not precluded and available. (Tr. 75-76). Once the ALJ reached her RFC assessment, she relied upon the VE's testimony to make a step five finding adverse to Plaintiff.

Plaintiff argues that the hypothetical question posed to the VE, which the ALJ relied on to find that she could perform other work which existed in significant numbers in the national economy, was not supported by substantial evidence. Pl.'s Br. at 19-20. She notes that when such a limitation was posed to the VE, he testified that the performance of any type of work was precluded. (Tr. 76). Pl.'s Br. at 19-20.

However, not every limitation alleged by Plaintiff must be included in the hypothetical question, only those which were supported by the evidence of record. See Wates v. Barnhart, 274 F. Supp. 2d 1024, 1040 (E.D. Wis. 2003). As previously discussed, the ALJ adequately assessed

-20-

Plaintiff's RFC, and, in doing so, reasonably determined that Plaintiff's work-related abilities did not include an inability to work eight hours a day in a forty-hour workweek. The ALJ properly found that the opinions regarding Plaintiff's inability to work forty hours per workweek were not entitled to controlling weight, as discussed above.

Consequently, the ALJ asked the VE to assume a person with Plaintiff's age, education and work experience who could perform light work with minimal work-related interaction with the pubic and co-workers, and who had a moderate limitation in concentration and responding appropriately to customary work pressures, such that she was limited to simple, routine and repetitive tasks. (Tr. 75). That hypothetical was representative of Plaintiff's RFC as found by the ALJ and supported by the record. Accordingly, substantial evidence also supports the ALJ's hypothetical question.

## VI.    CONCLUSION

For the reasons discussed above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that the Plaintiff's Motion for Judgment Reversing Decision (Document No. 9) be DENIED. Final Judgment shall enter in favor of the Commissioner.

LINCOLN D. ALMOND
United States Magistrate Judge
November 7, 2005

-21-